## SEIBEL ET AL. v. BATH ET AL.

APPEAL AND ERROR—REVIEW OF JUDGMENT BASED ON SPECIAL
    FINDINGS—RECORD—BILL OF EXCEPTIONS—MOTION FOR NEW
    TRIAL—PARTIES IN ERROR—FIXTURES—ADMINISTRATOR TAK-
    ING LEGAL TITLE TO TRUST PROPERTY—RIGHTS OF THIRD PER-
    SONS—NOTICE—LIS PENDENS—PROBATE PROCEEDINGS.

1.  A motion for new trial is not a part of the record unless
    incorporated in a bill of exceptions properly prepared, al-
    lowed and signed.

2.  No motion for new trial, nor bill of exceptions, is neces-
    sary to obtain a review of a judgment on the ground that
    it is not sustained by the findings of fact, and as contrary
    to law based upon such findings.

3.  Where in a petition in error as originally filled there is a
    defect of parties plaintiffs in error, the omitted party may,
    upon his consent, within the statutory period for bringing
    the proceedings in error, be joined as plaintiff in error, not-
    withstanding that a motion to dismiss on the ground of
    such defect of parties has been filed.

4.  Buildings owned by an intestate, located upon lands of
    other parties, are personal property as distinguished from
    real, and vest in the administrator, pending administration.

5.  A trustee who uses trust funds or property with which to
    buy property in his own name and to all appearance in
    his individual capacity holds the legal title thereto in
    trust for the beneficiary, but as against any other person
    without actual or constructive notice of the trust, who pur-
    chases the property from the trustee, or obtains a lien
    thereon by mortgage or by operation of law such as a
    mechanic's lien, dealing with the trustee in good faith and
    for valuable consideration, the trustee is to all intents and
    purposes the full owner, and such third person takes the
    property discharged of the trust.

6.  The above doctrine applied in favor of a mortgage and
    mechanic's lien to the case where an administratrix using
    funds of her own and of the estate indiscriminately, pur-
    chases in her own name, and apparently in her individual
    capacity, land upon which are located certain buildings
    which had been owned by the intestate, and, in his lifetime,
    located upon lands of others; and where she replaces the

buildings after partial destruction by fire, by using the insurance moneys collected by her.

7. The doctrine of lis pendens is never applied except where property has been in actual litigation, and the pleadings disclose the identical property which is the subject thereof.

8. The statute which prevents the acquiring by third persons of any interest in the subject matter of a suit pendente lite (Rev. Stat., Sec. 2442) contemplates an action brought by some person in some court, wherein the right or title to property is directly involved, and the property is described or identified in the pleadings with sufficient particularity to put one upon his inquiry should they be brought to his attention.

9. The rule of lis pendens does not apply to proceedings in probate connected with the administration of a decedent wherein by the inventory or otherwise it may appear that the heirs have some equity in certain property, the legal title to which is in other parties.

10. Where the trial court makes special findings of fact containing all that is essential to show the ownership and interests of the various parties to certain property in controversy, and renders conclusions of law and judgment, on error where the claim is that the conclusions of law and judgment are not sustained by the findings of fact, but as based thereon are contrary to law, the evidence not being in the record, the appellate court cannot assume that the court found other facts inconsistent with the special findings which would support the judgment.

[Commenced in District Court May 9, 1891. Decided June 25, 1895.]

ERROR to District Court for Albany County, HON. JOHN W. BLAKE, Judge.

ACTION to enjoin foreclosure of mortgage and mechanic's liens on property of infant heirs, and for the cancellation of said liens. The facts are fully stated in the opinion.

*Nellis E. Corthell*, for plaintiffs in error.

Where the right of action is clearly divisible, and the judgment is against one of the defendants and in favor of the other, the unsuccessful defendant need not make the other

a party to the appeal, unless such action is taken in the trial court as makes both of the defendants necessary parties to the appeal. (Elliott App. Pro., 141; Cox v. U. S., 6 Pet., 179; Brewster v. Wakefield, 63 U. S., 128; Davies &c. Co. v. Gottschalk, 81 Cal., 641; Fein v. Fein, 3 Wyo., 161.) The rights of Berner, Seibel and Crumrine are entirely distinct and several. One defendant can appeal if he have a several interest. (Forgay v. Conrad, 6 How., 201; Withenbury v. U. S., 5 Wall., 819; Germain v. Mason, 12 id., 259; Milner v. Meek, 95 U. S., 253.) The motion having been made to add the omitted party, he having consented thereto and requested the same, it should be granted. (Smetters v. Rainey, 13 O. St., 568; id., 14 id., 287; Bradford v. Andrews, 20 O. St., 208; Secor v. Witter, 39 id., 227; Bank v. Green, 40 id., 431; Wangerien v. Aspell, 47 id., 250.) The heirs can have no resulting trust in the land. Such a trust must arise, if at all, at the time when title to the land is acquired, and as a result of the payment of the purchase price by the cestui que trust. (Olcott v. Bynum, 17 Wall., 44; McClure v. Doak, 6 Baxt., 364; White v. Carpenter, 2 Paige, 238; Rogers v. Murray, 3 id., 398; Watson v. Erb, 33 O. S., 47; Walter v. Klock, 55 Ill., 362; Buck v. Swazey, 35 Me., 51.)

No interest in the land arises in favor of one advancing money for improvement thereof. (Bodwell v. Nutter, 63 N. H., 446; Francestown, v. Deering, 41 id., 438; Brown v. Turner, 113 Mo., 27.) It is essential to the creation of a resulting trust that the whole or an aliquot part of the purchase money should have been furnished by the beneficiary, so that he may be said to have an equity in the whole or in an undivided portion. (Sayre v. Townsends, 15 Wend., 650; Reynolds v. Morris, 17 O. St., 510; McGowan v. Same, 14 Gray, 119; Perry v. McHenry, 13 Ill., 227; Baker v. Vining, 30 Me., 121.) The resulting trust must be an equitable title, not merely a lien. (Cross v. Gaults, App. 97, Pa. St., 471; Hepburn v. Snyder, 3 id., 72; Ellison v. Jackson &c., 12 Cal., 554; White v. Carpenter, supra.) Without an express statute there can be no lien upon a building separate from an interest in the land. (Kellogg v. Smith Co., 1 Wash. St., 407; Tracy v.

Rogers, 69 Ill., 662; see Weathersby v. Sleeper, 42 Miss., 732; Allen v. Shortridge, 1 Duv. (Ky.), 34; Allen v. Montgomery, 48 Miss., 101; Alexander v. Berry, 54 id., 422.) The lien of the mechanics dates from the commencement of the building, and is preferred to all incumbrances attached to the building subsequent thereto. (R. S., sec. 1523; Meyer v. Constr. Co., 100 U. S., 457; Davis v. Bilsland, 85 U. S., 659; Nielson v. Ry. Co., 44 Ia., 71; Dunklee v. Crane, 103 Mass., 470; Gale v. Blaikie, 126 id., 274; Thielman v. Carr, 75 Ill., 393; Rankin v. Scott, 12 Wheat, 179; Anderson v. Dillaye, 47 N. Y., 678; Ivey v. White, 50 Miss., 142.) When an administrator invests assets of an estate in land, and takes the deed to himself, he may be guilty of devastatit, but may, nevertheless, convey the land free from the claims of distributees. (Richardson v. MacLemore, 60 Miss., 315; McLean v. Ladd, 66 Hun., 341; Carter v. Bank, 17 Me., 448; Woods App., 92 Pa. St., 379; Smith v. Ayer, 101 U. S., 320; Elliott v. Merryman, 1 W. & T. Lead C., Eq. 72, 106; R. S., sec. 2211.) Parties dealing with real estate may lawfully assume that the title is completely disclosed by the records, unless there is some circumstance of which they are bound to take notice. (Roll v. Rea., 50 N. J. L., 264; Webb on Rec. T., 154; Henry v. Bond, 55 N. W., 647 (Neb.); Phillips v. Clark, 4 Metc. (Ky.), 348.) The heirs have no other or greater rights than anyone else who furnishes money under similar circumstances.

Counsel also contended that no motion for new trial was necessary to raise the error complained of, and cited cases in support thereof.

*Melville C. Brown,* for defendants in error.

To review the question attempted by the petition in error, which is practically error of law occurring on the trial, the error complained of must have been saved by motion for new trial and bill of exceptions. (R. S., sec. 2649.) Findings by court or jury are to be taken advantage of in the same way. (R. S., secs. 2564-69.) It has been repeatedly held that no error will be considered, not passed upon by the court below and not preserved in a motion for a new trial. (Dolan v.

Church, 1 Wyo., 187; Ivinson v. Alsop, id., 251; Com'rs v. Hinton, id., 355; White v. Sisson, id., 395; Johns v. Adams, 2 id., 194; Perkins v. McDowell, id., 328; Rule 13, S. C.) That is also the rule in California. (Hihn v. Pack, 30 Cal., 280; Duff v. Fisher, 15 id., 375; Gaghardo v. Hoherlin, 18 id., 395; Allen v. Fennon, 27 id., 69; Doe v. Vallejaho, 29 id., 386.) The demurrers were passed on more than two years before the institution of proceedings in error, so that the statute of limitations has run as to such rulings. Appellate courts will not reverse on the ground that one finding is inconsistent with the judgment or conclusion of law, because every fact not expressed in the written findings that would sustain the judgment is presumed to have been made by the court, as well as those expressed. (Oakland v. Whipple, 39 Cal., 112; Kusel v. Sharkey, 46 id., 3; Gregory v. Nelson, 41 id., 278; 45 id., 231; 41 id., 683; 38 id., 595; id., 410; id., 522.) Proceedings in probate are "in rem." Notice of administrator's appointment is notice to all the world. The property of the estate is in the custody of the law, or the court, and the administratrix, the officer of the court. (1 Woerner's Adm., sec. 148; State v. R. R. Co., 10 Nev., 47; Gignon v. Astor, 2 How., 319; Day v. Micon, 18 Wall., 156; Dickey v. Vann, 81 Ala., 425.) Judgments in rem bind strangers as well as privies. (State v. R. R. Co., supra; As to lis pendens, see R. S., sec. 2442; 2 Dev. on Deeds, sec. 788.) An administrator has no power to create a lien against an estate, unless especially authorized by the court, under a statute permitting it. (Woerner on Adm., secs. 345, 356; Davis v. Holt, 58 N. H., 467; Gurney v. Maloney, 38 Cal., 85; Page's Est., 57 id., 238; Austin v. Monroe, 47 N. Y., 360; Daley v. Daley, 66 Ala., 266; Schmitler v. Simon, 101 N. Y., 554; Perry v. Cunningham, 40 Ark., 185; Curtis v. Bank, 39 O. St., 579; Kingman v. Soule, 132 Mass., 285; White v. Thompson, 79 Me., 207; Thompson v. Canterbury, 2 McCrary, 332.) All the parties in the court below should be made parties to the proceeding in error. (Wells v. Wells, 16 Am. Dec., 150; Central &c., Co. v. Chicago L. Co., 53 Kan., 677; Davis v. Merc. Co., 152 U. S., 590; Eq. Mut. Co. v. Lowe, 53 Kan., 89; Denegee v. Mushet, 46 La. Ann.,

90; Voseman v. Call, 35 N. E., 828.) The papers in this case being certified copies of journal entry, do not purport to be a judgment record. (Douglas v. Dakin, 46 Cal., 49; 41 id., 133; id., 156; 86 Tenn., 14; 15 R. I., 35; 2 Am. St. R., 863.)

POTTER, JUSTICE.

In this case Paul F. H. Bath and Josephine D. S. Bath, minor heirs, by Charles Kuster, their next friend, brought suit in the district court of Albany County to enjoin Gustav A. Seibel, George Berner and Eli Crumrine from further proceeding to foreclose or enforce certain mechanic's liens claimed by Seibel and Berner, respectively, and two mortgages held by Crumrine upon certain property alleged to belong to the said heirs, and to the end also that said encumbrances be declared void. Restraining orders were issued pending the suit.

Separate demurrers were filed to the petition and overruled, and the rulings severally excepted to. Separate answers were thereafter filed, which were met by replies, and trial was had before the court without the intervention of a jury. The court found the facts specially, and these, with the conclusions of law, were entered upon the journal as part of the judgments or decree. The evidence is not before us. The findings, decision, judgment and decree were severally excepted to by the defendants in the court below. Motions for new trial seem to have been filed, presented and overruled, and time allowed for reducing exceptions to writing. No bill of exceptions is in the record.

The petition alleged that one Frederick Bath died intestate at Laramie City, Wyoming, October 24, 1881, leaving surviving him as sole heirs of his estate his wife, Johanna Bath, and his two infant children, Paul F. H. Bath and Josephine D. S. Bath; that on November 2, 1881, the widow was appointed administratrix of said estate, and thereupon duly qualified and entered upon the discharge of the duties thereof; that the estate was duly appraised at $11,818.12, and the total indebtedness did not exceed $1,600.00, but that the said estate was then worth more than $10,000.00 net, one-half of which be-

longed to the said infant heirs. It is further alleged in the petition that on November 2, 1882, Johanna Bath made a report as administratrix, showing that after the payment of the debts of the estate and all expenses of administration, there remained in her hands $3,324.24; that none of the real estate of said estate had been disposed of, and a part only of the personal property had been converted into money. It is also alleged that the real estate consisted in part of the "Laramie Brewery," situated on parts of sections 20 and 21, in Tp. 16 N., of R. 73 W., in Albany County, Wyoming; and parts of lots 20, 21, and 22, in block 192, in the Town of Laramie City, said brewery consisting of a stone ice-house, stone malt house, a frame brewery building, and frame stable. That Frederick Bath in his life time made a pre-emption filing upon certain described lands and made settlement thereon with his family; that after his death his widow, on July 21, 1882, made a cash entry of said land and paid therefor with moneys of the estate, and a patent from the government was issued to her therefor. That, it being discovered the brewery was erected on lands title to which was not in Frederick Bath, the administratrix purchased the same, a part from the Union Pacific Railway Company, and a part, presumably, from some other person, paying for the same with moneys of the estate. That the deeds to said land were made to Johanna Burman, she being said widow, and having in the meantime remarried. It is charged that these lands and the titles thereto were and are held by her in trust for the heirs of said estate.

That said Johanna Burman caused said Laramie Brewery to be rebuilded (they having been destroyed by fire as it later appears), expending thereon about $8,000.00 of the moneys of the estate, and it is charged this was unlawful; further, that she contracted with said Seibel for machinery for said brewery, and with said Berner for work, labor and materials, in the construction and repair thereof, and that each of them claim a balance due them for such material and labor—to Seibel, $2,256.32, and to Berner, $4,738.40—for which balance each of them have filed mechanic's liens and have brought an

action in the district court to enforce and foreclose said liens upon the brewery and the lands upon which it stands, to the extent of one acre.

It is also stated that E. Crumrine holds two several mortgages for $6,000.00 and $4,000.00, respectively, covering the N. ½ of N. W. ¼ and lots 3 and 4 of Section 28, in Tp. 16 N., of Range 73 W., also the S. E. ¼ of S. W. ¼ of Section 21, Tp. 16 N., of R. 73 W., and a portion of Section 20, containing 6/10 acres; also lots 11, 12, and 13, in block 164, and parts of lots 20, 21, and 22, in block 192, in Laramie City; said mortgages having been executed by said Johanna Burman. That Crumrine claims them as subsisting liens, and has appeared in the suit brought by Seibel and Berner and set up his liens, asking that they be declared prior to the said mechanic's liens. It is charged that the property thus mortgaged was the property of the said estate. The mortgages were given in May and July, 1890, respectively.

It is further alleged that the district court, in April, 1891 (which, upon the admission of the State, assumed probate jurisdiction), had cited said administratrix to render an account and settlement of the estate, and that she was at the time of filing the petition in this suit, preparing her statement of account.

The answers filed by the several defendants denied that any of the property belonged to the estate; admitted the purchase of the lands by the widow in her own name, but denied that she did so as administratrix or with moneys of the estate, or that she took the lands in trust as alleged in the petition; denied that the brewery was rebuilt or repaired with any of the moneys of the estate or without authority of law. As a second defense, each answering defendant set up want of knowledge or notice of the trust, actual or constructive.

As the errors charged are predicated upon the conclusion of law reached by the court, and judgment or decree rendered upon the facts as found by it, it has been necessary to thus rather explicitly review the allegations of the pleadings, the evidence not being before us, and the findings of fact not being opposed by the plaintiffs in error; the sole contention

being that upon the findings of fact a different judgment should have been rendered.

The court found the death of Frederick Bath as alleged and admitted, and that he left surviving him his widow and two infant children already named, the appointment of Mrs. Bath as administratrix; that she was remarried to one John A. Burman on the 1st day of December, 1885, and that her letters of administration had not been revoked, but that she continued to act as administratrix until after the bringing of said action, and during all that time retained possession of the property of the estate. That the property of the estate at the time of the death of the deceased "consisted in part of certain buildings situated upon a portion of sections twenty (20) and twenty-one (21), in Township number sixteen (16) north, of Range number seventy-three (73) west, and known as the Laramie Brewery; the title to said lands in said section number twenty (20) then being in some person other than said Frederick Bath, deceased, and title to said lands in said section twenty-one (21) being then in the Union Pacific Railroad Company, and that the property of said estate consisted further of parts of lots numbered twenty (20), twenty-one (21), and twenty-two (22), in block numbered one hundred ninety-two (192), in Town of Laramie City, in said county and State, title to which said property was in said Frederick Bath, deceased."

The court then further finds that in 1882, after the death of Frederick Bath, said Johanna Bath purchased the S. W. ¼ of the S. W. ¼ of said section 21 from the Union Pacific Railroad Company, and took a conveyance therefor in her own name and in her personal capacity, and has ever since then held the legal title thereto in her own name; that in 1890, as Johanna Burman, she purchased from the owner the said lands in section 20 and took a conveyance therefor in her own name and in her personal capacity, and ever since has held the legal title thereto in her own name; that at the time of the death of Frederick Bath he was living with his family upon certain described lands in section 28 and had filed a pre-emption declaratory statement therefor, but had not ob-

27

tained title thereto; and that after his death, and in the year 1882, said Johanna Bath filed a declaratory statement for said lands in her own name and thereafter made final proof and entered said lands in her own name and obtained a patent from the United States therefor, and ever since then has had the legal title to said lands in her own name and in her personal capacity. That the moneys used in obtaining title to the lands in section 21 and the lands upon which she filed her declaratory statement in section 28, were in part her personal moneys and in part the moneys of the estate, and that it is impossible to determine the amount or proportion of each.

That after the death of Frederick Bath, the brewery buildings were in part destroyed by fire, but that the foundations, cellars and other portions remaining were worth $2,892.00, and that $3,684.00 were received by Johanna Bath as proceeds of the insurance on buildings so destroyed, and by her reinvested in the new buildings constituting the said Laramie Brewery.

As to notice, the court finds that neither of the defendants below at the time that their several liens accrued to them had any notice or knowledge of the claims of said infant heirs to the property in controversy, nor that any of said property constituted or was claimed to be the property of the estate of Frederick Bath, deceased, nor that the said estate was still in process of administration, nor that Johanna Bath was administratrix thereof, nor that any of the moneys of said estate were used to obtain title to said lands or any portion thereof, but that, on the contrary, each of the defendants contracted his obligations and claims, and that the same accrued to them respectively in good faith and for valuable considerations.

As a mixed question, perhaps, of law and fact, the court finds that the undivided one-half of the buildings remaining after the fire and one-half of the insurance moneys were the property of the plaintiffs, said infant heirs.

The court found them entitled to a first lien upon the brewery building as then constituted, but not upon the lands upon which the same is situate, for the sum of $3,288.36 in prefer-

ence to the claims of the defendants or any of them; and that they were entitled to an undivided one-half of part of lots 20, 21, and 22, in block 192, as heirs of the said estate.

It was thereupon ordered and decreed that the injunctions be dissolved and vacated; and that the said lienors and mortgagee be at liberty to enforce in any and all lawful ways their claims and liens against said lands and other property, subject to a first lien upon said building for said sum of $3,288.36, without interest, in favor of the said infant heirs, and subject also to the undivided one-half interest of said heirs in said lots in said block 192.

After the filing of the petition in error, plaintiffs in error having discovered that Josephine D. S. Bath was deceased, filed a motion to substitute in her stead as defendants in error her heirs Paul F. H. Bath, already a party, and Ralph Burman and Lena Burman, minor children; which was assented to by counsel for defendants in error, and the order was made as requested; and plaintiffs in error also, with the consent of counsel for defendants in error, moved the appointment of Charles Kuster as guardian ad litem for said Ralph and Lena Burman. The order may be entered as prayed for.

The petition in error was filed in this court on December 7, 1894. On the 23rd day of March, 1895, the defendants in error filed a motion to dismiss the proceedings in error on several grounds, which resolve themselves into two: 1st. That there is no error presented by the petition in error which can be reviewed by this court, for the reason that there is no bill of exceptions in the record, and no motion for new trial presented by bill of exceptions; the statute of limitations of two years having expired, as alleged, as to the ruling on the demurrers. 2nd. That there is a defect of parties in this: that one of the defendants in the court below (Eli Crumrine) is not joined as plaintiff in error, and has not been served with summons in error, or in any manner notified of the pending proceedings in error. After the filing of this motion to dismiss and before hearing, the plaintiffs in error filed a motion to make said Crumrine a plaintiff in error, producing his consent in writing thereto. The two motions were submitted to-

gether, and the whole case was also submitted at the same time, the merits of the motions and the points involved in the case itself being fully discussed in and covered by the briefs of the respective parties.

If the motion to dismiss is well founded, we need go no further.

The petition in error charges error in overruling the demurrers to the original petition; and error in the judgment in that the same is not sustained by the findings of fact, and that the same is contrary to law. In addition, error is charged in overruling the motions for new trial.

In so far as it is attempted to obtain a review of the order of the district court in overruling the motions for new trial, the record is insufficient to properly present such error, if any exists.

Under our practice and a long line of decisions in this court, a motion for a new trial is not a part of the record unless incorporated in a bill of exceptions properly prepared, allowed and signed. Not only have the rules of the Supreme Court required this, but the decisions thereof have been uniform in this respect and have formed a rule for practice in error proceedings much too long established to be now abandoned. The present rule of the court, which is given the authority of statute law, provides that "nothing which could have been properly assigned as a ground for a new trial in the court below will be considered in this court, unless it shall appear that the same was properly presented to the court below by a motion for a new trial, and that such motion was overruled and exception was at the time reserved to such ruling; all of which shall be embraced in the bill of exceptions." This may not, in terms, be as restrictive as the former rule, but we apprehend the latter went no further and did not attempt to require such a motion unless the same was proper under the statute. A new trial under our laws is "a re-examination, in the same court, of an issue of fact, after a verdict by a jury, a report of a referee or master, or a decision by the court." Rev. Stat., 1887, Sec. 2652.

In so far as error is predicated upon the judgment or decree

as not being sustained by the findings of fact, and as contrary to law based upon such findings, no motion for a new trial was necessary. No re-examination of an issue of fact is required. The plaintiffs in error accept the findings of fact; they do not controvert them. The findings are entered upon the journal and are a part of the record. The petition, demurrers, answers and replies are also parts of the record proper. To enable this court to consider an assignment of error that the judgment or decree is not sustained by the special findings, and, as based thereon, is contrary to law, neither a motion for new trial nor bill of exceptions is necessary. Froman v. Patterson, 24 Pac., 692 (Mont.); Curtis v. Watting, 18 Pac., 54 (Idaho); Roberts v. Eldred, 15 Pac., 16 (Cal.); see Perkins v. McDowell, 3 Wyo., 328.) We could not, however, review the findings of fact without a bill of exceptions, and a motion for new trial, to the overruling of which an exception had been reserved and duly embraced in the bill.

But it is urged that there is a defect of parties. It is extremely doubtful if there is any such defect of parties in the petition in error as originally filed. The defendants Seibel, Berner and Crumrine had no joint interests in the suit below. Their liens were several and, perhaps, antagonistic, although not opposed to each other in the present case. A review of the decree upon the application of one of them could not in any sense, it seems to us, injuriously affect the others. However that may be, the plaintiffs in error, within the statutory period of two years for bringing error proceedings in this court, from a final judgment, move to join Mr. Crumrine as plaintiff in error, and he consents thereto, not only, but joins in the request. We perceive no reasonable objection to the granting of this motion. The addition of new parties in the appellate court is not a novel proceeding. In Ohio, whose civil code is the pattern for our own, it is frequently allowed. They have gone so far in that State as practically to overrule an earlier case, Smetters v. Rainey, 14 O. S., 287, wherein it was held that where omitted parties were necessary, they can not be permitted to be brought in after the period of limitation for prosecuting error had expired. Secor

v. Witter, 39 O. St., 218; Bradford v. Andrews, 20 id., 208; Bank v. Green, 40 id., 431; Wangerien v. Ospell, 47 id., 250; see also Smetters v. Railway, 13 id., 568.

In Kansas, where objection was made on the ground that several plaintiffs in error were improperly joined, the court stated that, even if they considered the petition defective as contended for, they would in such a case; where the question was doubtful, have granted permission to each, to file separate petitions in error, rather than sustain the motion to dismiss. Jordan v. McNeil, 25 Kans., 459.

If these parties are improperly joined, no objection on that ground is made.

The counsel for defendants in error insisting that Crumrine should have been brought in either as plaintiff or defendant in error, and his written consent and request to be joined as plaintiff in error being filed, the other plaintiffs in error moving therefor, all within the period within which error could have been prosecuted, we think he may be joined. See O'Keefe v. Foster, decided at the present term of this court. The motion to dismiss is therefore denied. The motion to make Eli Crumrine an additional plaintiff in error is granted; and the plaintiffs in error may have leave to amend their petition in error by joining said Crumrine as a plaintiff in error.

Plaintiffs in error insist that the judgment and decree of the district court postponing their liens to a lien of the plaintiff heirs in the brewery building for one-half of the value of the ruins of the old building, and one-half of the insurance moneys invested by their mother, Johanna Burman, in the construction and repair thereof, is error, and unsupported by the findings of fact.

As against this claim, counsel for the heirs contends that we must assume, in the absence of evidence to the contrary, that the court had evidence before it to sustain the conclusion of law and its judgment. In case the finding of fact had been a general one, this might be true, but the court finds as facts all that is essential to show the ownership of the various parties, including the interests of the heirs in the buildings and lands; we can hardly assume that, upon the evidence, the

court found other facts inconsistent with those entered in its findings as its conclusion upon all the facts.

It is further insisted that the court took the view that the intestate, being the owner of the buildings, the children, the heirs to one-half of his estate, became, and remained the absolute owners thereof, and, further, that the proceedings in the probate court constituted lis pendens, and the plaintiffs in error could not acquire, pending the administration of the estate, any interest in, or lien upon, the buildings as against the heirs other than Mrs. Burman.

It seems that Frederick Bath, at the time of his death, was the owner of the brewery buildings, but did not own the land or any portion thereof upon which they were built. The Railway Company owned a part thereof, and some one, whose name is not disclosed, held the title to the remainder. If he owned the buildings only, so far as his ownership went, the property must have been personal in character as distinguished from real. Ewell on Fixtures, pp. 66 and 67. There could not have been two owners of the real estate. Under certain conditions he might have owned the buildings, notwithstanding the other ownership of the land; and have had the right to retain them where they were, or remove them; whether these conditions existed or not, does not appear further than by the finding that the buildings were the property of the estate. Without pursuing this inquiry further, however, it may be said, in passing, if the buildings were personal property they vested in the administratrix the same as all other personal estate, pending administration. We are inclined to think that this is the proper view to take of this matter, and that such was the legal status of the property. Afterwards Mrs. Bath, who was the administratrix, purchased in her own name and in her personal capacity all the lands upon which the buildings were situated, the purchase of a portion not being made until the year 1890, taking the deeds of conveyance in her own name. As to part of this land she used in the purchase indiscriminately moneys of her own and of the estate, but in what proportion it is not possible to determine. She thereby obtained title to the realty in her personal

capacity. She was also in possession. It is probable that as against the other heirs, she held the buildings, and the land as well, into which the estate money had gone in trust for them to the extent of their interest; but the buildings, as against any one dealing with her without notice, actual or constructive, have become a part of the realty, if they were not so before that time; and they could not have been so before, unless they belonged to the owner of the soil. She, then, has taken the legal title to some property of the estate. She, also, invested in these buildings upon land to which she held the legal title some insurance moneys belonging to the estate; thus, again, taking to herself title to property of the estate. It is a similar case in both instances to a trustee using trust property or funds with which to buy property in his own name and, to all appearances, in his individual capacity. In such cases, what is the result? The trustee has the legal title, it is true, but he holds such title in trust for the beneficiary. As against any other person, however, without notice of the trust, or the equitable interests of the cestui que trust, who purchases the same from the trustee or obtains a lien thereon by mortgage or by operation of law such as mechanic's lien, dealing with the trustee, in good faith for valuable consideration, he is to all intents and purposes the full owner, and such third person takes it discharged of the trust. 2 Pom. Eq. Jur., secs. 591, 1049, 1051, and Note 1, with cases cited, Patterson v. Booth, 103 Mo., 402; Bomar v. Gist, 25 S. C., 340; Bowman v. Anderson, 82 Ia., 210.

We say without notice, and include therein notice actual or constructive, as well as such notice as is presumed under the doctrine of lis pendens.

In the case at bar the record title was never in the intestate, the lienors and mortgagee had no notice or knowledge that the buildings were the property of the estate, or of any claim or interest of the heirs, or even that the holder of the legal title was the administratrix. It may be that all persons must be conclusively charged with notice of the appointment of the administratrix, but that, in itself, would not cause a presumption of notice of all the property, personal and other-

wise, which belonged to the estate. The findings of fact not only do not show that they had notice of such facts as should have put them upon inquiry, but go so far as to establish the contrary. Thus, they had neither notice; actual or constructive, unless the proceedings of the probate court are to be considered as lis pendens. Lis pendens is a harsh rule in all cases, and especially so under our statute, which does not require a filing or recording in the office of the register of deeds, and a court will not extend its provisions beyond that absolutely required by the strict necessities of the case. It has never been applied, so far as our investigation goes, except where property, generally real estate, has been in actual litigation, and the pleadings disclose the identical property which is the subject thereof. The statute of this State, Rev. Stat., Sec. 2442, which is a part of the Code of Civil Procedure, provides that "when the summons has been served, or publication made, the action is pending, so as to charge third persons with notice of its pendency; and, while pending, no interest can be acquired by third persons in the subject matter thereof, as against the plaintiff's title." This section clearly contemplates an action brought by some person in some court wherein the title or right to property is directly involved; and under the general rule, as aforesaid, the property must be described or identified in the pleadings with sufficient particularity to have put one upon his inquiry should they have been brought to his attention. Surely nothing more than is reasonably disclosed by the pleadings can bind any one under such a doctrine. It would, indeed, be a harsh rule if that were so. Arrington v. Arrington, 114 N. C., 151.

In California it has been directly held in two cases that such probate proceedings do not constitute constructive notice. Niderer v. Ayers, 83 Cal., 39; Stockton B. & L. Ass'n v. Chalmers, 65 Cal., 93.

The latter case involved an order of probate setting apart a homestead, the record title not being in the intestate; and the former was a case where an administrator held the legal title to property belonging to the heir, and an order of distribution had actually been made, but before it was recorded the

administrator holding the legal title sold it to another for a valuable consideration, who had no notice of the secret trust. It was held the probate proceedings did not impart constructive notice.

It seems to me it would be a dangerous precedent to establish, that would conclusively bind every one who should deal with the holder of the legal title to personal or real estate, by proceedings in a court. of probate, in the matter of some estate wherein, perhaps, by the inventory or otherwise, it might appear that the heirs had some equity in that property, where there is no actual notice or notice of any fact which would put a reasonably prudent man upon inquiry, and there is no element of bad faith in the transaction.

We are of opinion that, under the facts as found by the district court, no notice, either constructive or under the rule of lis pendens, can be imputed to the plaintiffs in error by reason of the probate proceedings.

Upon the finding of facts the district court erred in awarding a first lien to the defendants in error upon the buildings. Whatever their rights are as against Johanna Burman, who is not a party to this suit, their equity is subordinate to the liens of the defendants, except as to their interest in lots 20, 21, and 22, in block 192, which stood in the name of Frederick Bath.

The judgment and decree must be reversed and vacated, and the district court is directed to enter a judgment and decree upon the findings in favor of Seibel and Berner, respectively, and to dissolve the injunctions as to them without subjecting their claims to any lien or claim of the said heirs, and to render a judgment and decree in favor of Crumrine except as to the undivided one-half of that part of lots 20, 21, and 22, in block 192, in Laramie City, which stood in the name of Frederick Bath, as stated in the findings, which undivided one-half interest belongs to said heirs other than Johanna Burman; to dissolve the injunctions as to Crumrine without subjecting his claims to any lien or claim of the heirs except as to said interest in said lots in block 192; and to enjoin him from enforcing or foreclosing his mortgages or either of them

upon that interest in said last described lots held as aforesaid by Paul F. H. Bath, Ralph Burman and Lena Burman.

*Reversed and judgment directed.*

GROESBECK, C. J., and CONAWAY, J., concur.