Argued November 13, 1961, reversed March 14, 1962

# MALLORY ET UX *v.* CHING

369 P. 2d 734

*Robert M. Stults,* Roseburg, argued the cause for

appellant. On the brief were Stults and Jayne, Roseburg.

*Edward M. Murphy,* Roseburg, argued the cause for respondents. On the brief were Yates, Murphy and Carlson, Roseburg.

Before McAllister, Chief Justice, and Warner, Perry, Sloan and Brand, Justices.

PERRY, J.

This is an action at law brought by the plaintiffs who are the owners of real property near Canyonville, Oregon, to recover a payment alleged to be due under an agreement of sale and purchase. Jury trial was waived and the cause tried to the court. The plaintiffs recovered and the defendant appeals.

The facts disclosed in the record are that plaintiffs listed their land for sale with a real estate broker in Roseburg. On the 29th of October, 1959, the defendant with the broker examined the property after which the broker prepared an agreement. When it was signed by defendant it did not designate the escrow agent, nor did it contain the phrase "60 days foreclosure." After signing it the defendant left Oregon for his home in Hawaii. Subsequently the broker presented the agreement to the plaintiffs at which time the phrase set out above was inserted. The defendant had no knowledge of the addition until after receiving the agreement in Hawaii. The agreement reads as follows:

"AGREEMENT OF SALE
"United Farm Agency, Broker

"Agreement made this 29th day of October, 1959, on property known as No. 382 United Farm Agency list at Roseburg, State of Oregon, by and between

"SELLER: Thomas & Laura Mallory, Star Route, Canyonville, Oregon, and

"BUYER: Stanley R Ching & Anna K Ching & Sen Sin Ching. 2390 Aina Lani Place Honolulu 14, Hawaii.

"Seller agrees, in consideration of the sum of $52,500 to be fully paid as hereinafter mentioned, to sell to the buyer the following described property, located in the County of Douglas, State of Oregon

"REAL ESTATE: 414 acres located in Section 19, Township 30S, Range 4 West.

"PERSONAL PROPERTY: Seller to deliver Bill of Sale on personal property at closing of Title Company Escrow.

| | |
|---|---|
| 2 Tractors—In running condition | 1 saddle horse |
| 2 Plows | 1 electric motor, & pump, 20 hsp |
| Spring tooth harrow. | 24 Hens. |
| Disc. | |
| Grain Drill | |

"And the buyer agrees to purchase said property at said consideration and to pay the same as follows: Amount paid on execution of this contract: $1,500 "Additional amount to be deposited in escrow on or before the 10th day of February, 1960: $8,500

"Existing deed of trust or mortgage encumbrance assumed by buyer: (Amount, terms of payment, rate of interest) $4,500 payable $270.50 Semi annually, payments due December & June, each year. Seller to make 1959 December payment.

"And the buyer agrees to pay the balance as follows: Balance of $38,000 payable $5,000 August 10, 1960. Balance of $33,000 payable $1,500 or more, plus interest at 6% annually, first payment due August 10, 1961, and thereafter on that date until paid in full. In event Mr Mallory repossesses 112

acres, buyers to have first option to buy the 112 acres.

Deed, and title insurance policy to be placed in escrow, and payments to be made to, South Umpqua State Bank, Canyonville, Oregon

"All deferred payments not already secured by existing deed of trust or mortgage are to be evidenced by note or notes signed by buyer contract on said real estate with interest from date of closing of escrow at the rate of 6% per annum.

*60 days, foreclosure*

"And the seller, on receiving such payment at the time and in the manner above mentioned, shall at his own proper cost and expense execute, acknowledge and deliver to buyer or to buyer's heirs or assigns a proper deed with usual covenants for conveying to buyer marketable title to said premises, free from all encumbrances except those mentioned herein, easements of record, and the following: (Insert here any other restrictions, easements or covenants running with the land.)

"Of record.

"Deed shall be delivered at closing of escrow. Taxes, fire and/or casualty insurance costs, and rents shall be pro-rated as of date of closing of escrow.

"Escrow fee and title insurance costs shall be paid as follows: Seller to pay ½ of escrow fees, and title insurance premium, and buyer to pay ½ of escrow fee.

"The risk of loss or damage by fire or act of God prior to consummation of this contract is hereby assumed by seller.

"Possession of premises shall be given on or before 30 days after closing of Title Co. escrow.

"It is agreed that if either seller or buyer fails or neglects to perform his part of this agreement he shall forthwith pay and forfeit as liquidated damages to the other party a sum equal to ten per cent of the agreed price of sale.

"It is agreed that the buyer has thoroughly ex-

amined the property to be conveyed and relies solely on his own judgment in making this agreement to purchase, and that there are no agreements, understandings or representations made either by seller, broker or broker's representatives that are not set forth herein.

"It is agreed and understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties.

"Buyer acknowledges receipt of an exact copy of this agreement.

"IN WITNESS WHEREOF, the parties have set their hands the day and year first above written.

(Signed)  Stanley R. Ching
                Sen Sin Ching
                        Buyer

                                    (Signed)  T. P. Mallory
                                                  Laura B. Mallory
                                                          Seller"

(Emphasis ours)

The defendant, after receiving the agreement to which the phrase "60 days foreclosure" had been added, did nothing further about the matter nor did he advise the plaintiffs whether he intended to or did not intend to go ahead with the transaction. On February 10, 1960, the day defendant was to commence performance of the agreement, he returned to Oregon and advised the broker he would not purchase the property.

With reference to the purpose of the words added after the defendant's signature was obtained, the real estate broker testified that it was inserted by him with the plaintiffs' consent for the benefit of the defendant. The tenor of his testimony was that if defendant

missed a payment he had sixty days of grace in which to make the payment before foreclosure could be commenced by plaintiffs.

Defendant's first assignment of error is that there is no substantial evidence that the agreement sued upon was ever entered into between the parties. The basis of his contention is that after the alteration was made without his consent, the agreement as altered was only a counter offer which he did not accept.

■ If an instrument has been signed by one party with the understanding that the other party is also to sign and it is materially altered and then signed by the subsequent party, the first party is not bound unless he subsequently ratifies the change. *Mayer v. First Nat. Co. of Sarasota,* 99 Fla 173, 125 So 909; *North American Life Ins. Co. of Chicago v. Fulton,* (Tex Civ App 1934) 73 SW2d 630.

> "It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either." *Eliason et al. v. Henshaw,* 4 Wheat. 225, 228, 4 L ed 556.

This rule obtains in the state of Oregon and when applied where new or different terms are inserted in the purported acceptance this amounts to a rejection of the original offer. *Small v. Paulson,* 187 Or 76, 209 P2d 779, and cases cited therein. There is no dispute in the evidence that a change was made in the agreement subsequent to defendant's signing. The plaintiffs

contend that the change made in the agreement, however, is beneficial to the defendant and he cannot therefore contend that no valid agreement between the parties exists.

"The authorities are practically unanimous in holding that actual loss or injury as the result of an alteration of an instrument is not the test of the materiality thereof, and that it is equally unimportant whether the ultimate operation of the alteration would be either beneficial or prejudicial to the party sought to be charged thereon, although, in a few cases, there are expressions which would seem to indicate that such elements were given consideration. In general, the courts do not consider whether the party sought to be charged has been or could be injuriously or beneficially affected, but whether or not his rights have been materially affected,—whether the contract in its altered condition is the contract which he entered into. In other words, the courts will not undertake to say that he would have made the contract as altered merely because its terms are more favorable to him than those of the original instrument, any more than they would be justified in a like conclusion where the alteration imports an additional liability; in neither case is the altered paper the contract which the party made." 2 Am Jur 616, § 26.

■ Since it is undisputed that a change was made in the instrument subsequent to defendant affixing his signature thereto, the sole question is whether or not the change made was material. This is a matter of law for the court. *Palomaki v. Laurell,* 86 Or 491, 168 P 935.

■ An alteration of an instrument which affects the time of the doing of a particular act such as the payment of money is a material alteration. *Bowers v. Rineard,* 209 Pa 545, 58 A 912; *Hodge v. Gilman,* 20 Ill 437.

The phrase "60 days foreclosure" is ambiguous but there can be no question that its inclusion was for the purpose of effecting a change in the rights and obligations of the parties, and, as previously pointed out, whether it enlarged or restricted the right of the defendant is, in the eyes of the law, immaterial. The fact remains that the alteration did, even under plaintiffs' theory, change the time in which defendant could make the payments and this being material was therefore not the agreement of the defendant.

The judgment is reversed with instructions to enter judgment for the defendant.