Bob STARRETT and Dorthea Starrett, d/b/a Northwest Carriers, Starrett Trucking, Rocky Mountain Trucking and Dalgarno Transportation, Inc., Appellants (Defendants and Third-Party Plaintiffs),

v.

Tom SHEPARD, d/b/a Shepard's Service, Appellee (Plaintiff),

Northwest Carriers, Inc., a Utah Corporation, Appellee (Third-Party Defendant).

No. 5200.

Supreme Court of Wyoming.

Feb. 26, 1980.

John L. Hoke, Rawlins (argued), for appellants.

Dennis G. Bonner, Craig, Colo. (argued), for appellee Shepard.

Larry N. Long, Salt Lake City, Utah (argued), for appellee Northwest Carriers, Inc.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellee-plaintiff Shepard (hereinafter referred to as Shepard) operates a motor vehicle repair business and a bulk retail-wholesale outlet for petroleum products at Baggs. He instituted this action against appellants-defendants and third-party plaintiffs Starretts (hereinafter referred to as Starretts) on an account stated for work, labor and services and for interest thereon in the amount of $10,553.20. The thrust of Starretts' answer and of their third-party amended complaint is that appellee-third-party defendant Northwest Carriers, Inc. (hereinafter referred to as Northwest) is liable for payment of the $10,553.20 inasmuch as the debt was incurred for services rendered to motor vehicles which were leased by Starretts to Northwest under a lease agreement, which established the relationship of employer-employee or of principal-agent between the parties to it, with Northwest being the employer or principal

and Starretts being the employee or agent. The trial court refused to admit a copy of the lease agreement into evidence. After a trial to the court, a judgment was entered for Shepard on his claim against Starretts and for Northwest on Starretts' claim against it.

We affirm the judgment in favor of Shepard. Since we find error in the failure of the trial court to admit the lease agreement into evidence, we reverse the judgment in favor of Northwest and remand the case for a new trial on the claim of Starretts against Northwest.

### JUDGMENT FOR SHEPARD

Starretts' sole contention of error with respect to the judgment against them and in favor of Shepard is that they were acting in the transaction as employees or agents for Northwest and therefore could not be held liable on a contract made with Shepard for their disclosed employer or principal. This contention presents two issues of fact: One, Were Starretts employees or agents of Northwest? and two, If so, was such relationship disclosed to Shepard?

With reference to issues of fact on appeal, findings of fact are presumptively correct and shall not be set aside unless clearly erroneous or contrary to the great weight of the evidence. *Whitefoot v. Hanover Insurance Company*, Wyo., 561 P.2d 717 (1977); *Shores v. Lindsey*, Wyo., 591 P.2d 895 (1979). In addition to the facts specially found, the trial court is assumed to have found those consistent facts which support the judgment, and the trial court's findings are entitled to benefit of all reasonable inferences in support thereof. *Hanna State & Savings Bank v. Matson*, 53 Wyo. 1, 77 P.2d 621 (1938); *Seibel v. Bath*, 5 Wyo. 409, 40 P. 756 (1895).

In this case, the trial court found:

"* * * that Plaintiff [Shepard] did business with Defendants [Starretts] individually and regardless of what title Defendants used, there is every indicia of responsibility of the Defendants and assumption of liability by them for the payment of Plaintiff's bill."

At the conclusion of the presentation of the evidence, the trial court rendered its decision and directed preparation of the form of order, saying among other things:

"* * * It's also interesting, I think, in the course of the testimony, that Mr. Starrett said he acted as terminal manager, that he used the Husky Station [Shepard's place of business] somewhat as his dispatch post and he had not only contact but seemingly intimate contact with the Starretts at this time, and at no time was it apparently communicated that Northwest Carriers was liable for these bills and that they would pay these bills * * *."

With reference to the law applicable to these issues of fact:

"The burden of establishing the extent of an agency rests upon the one who asserts it. * * *" *Czapla v. Grieves*, Wyo., 549 P.2d 650, 653 (1976).

"'An agent who contracts on behalf of a disclosed principal and within the scope of his authority, in the absence of an agreement otherwise, or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, is not personally liable to the other contracting party * * *.'" *Thomas v. Gonzelas*, 79 Wyo. 111, 119, 331 P.2d 832, 834 (1958) quoting 3 C.J.S. Agency § 215, p. 119. See *Kure v. Chevrolet Motor Division*, Wyo., 581 P.2d 603 (1978).

"* * * An agent of an undisclosed principal is subject to all liability, expressed or implied, created by the contract in the same manner as if he were the principal * * *." *S-Creek Ranch, Inc. v. Monier & Company*, Wyo., 509 P.2d 777, 783 (1973).

"* * * [T]he fact of the agency and the nature and extent of the agent's authority were questions for the jury * *." *Henderson v. Coleman*, 19 Wyo. 183, 211–212, 115 P. 439, 445 (1911), reh. den. 19 Wyo. 183, 115 P. 1136 (1911).

"Whether or not the fact of the agency and the name of the principal were dis-

closed or known to the third party so as to protect the agent from personal liability on the transaction is essentially a question of fact which depends upon the circumstances surrounding the particular transaction. * * * " 3 Am.Jur.2d Agency § 320, p. 678 (1962).

█ Inasmuch as we will hold that the lease agreement was improperly excluded from evidence, the trial court's finding relative to the nonexistence of the claimed employment or agency relationship may have been improper. However, we need not make a determination relative thereto since there is more than sufficient evidence in the record that the agency or employment, if one, was not disclosed to Shepard. And this determination is dispositive of the claim by Shepard against Starretts.

Shepard was not directly advised that an agency or employment relationship existed between Starretts and Northwest. Nonetheless, Starretts contend that such was within the knowledge of Shepard by virtue of the fact that some of the fuel and services involved in the claim were delivered by and performed on motor vehicles bearing Northwest's name or insignia, the fact that some of the charge tickets referred to Northwest, and the fact that for a period of time the statements were sent to Northwest in Moab. However, there was testimony that the account was opened at Starretts' request in April 1975; that Starretts were the ones who directed that the statements be sent to them rather than to Northwest—and such was done in January of 1976; the fact that Starretts were making the payments on the account until it became in default; the fact that the default was for the period of January 1, 1977 to April 7, 1977 in the amount for which this action was instituted; and the fact that Starretts, not Northwest, agreed that it was proper to charge interest on the amount in default. There was no testimony to reflect that Shepard discussed matters concerning the account with anyone other than Starretts.

Even if it were determined that an employer-employee or principal-agent relationship existed between Starretts and Northwest, there is more than a sufficiency of evidence to support the finding that Shepard was not aware of it to the end that Northwest would be liable for this account. The trial court's finding and decision in this respect is not clearly erroneous or contrary to the great weight of the evidence.

## JUDGMENT FOR NORTHWEST

Starretts contend that the trial court erred in rendering judgment for Northwest in that:

1.  A default judgment should have been entered against Northwest because a motion to quash the service of a summons was filed by a non-lawyer corporate officer of Northwest.

2.  The lease agreement between Starretts and Northwest was improperly excluded from evidence.

3.  The evidence was sufficient to establish Northwest's liability for Shepard's claim.

Turning first to the contention that the lease agreement was improperly excluded from evidence, the following colloquy occurred on direct examination of Dorthea Starrett by her attorney (Mr. Hoke is Starretts' attorney, Mr. Bonner is Shepard's attorney, Mr. Long is Northwest's attorney, and Exhibit B is the lease agreement):

"Q. I'd refer you again to Defendants' Exhibit B.

"THE COURT: Where's the original of this exhibit?

"THE WITNESS: Sir, may I answer?

"THE COURT: Yes.

"THE WITNESS: The original is with our other attorneys in Salt Lake City. My husband didn't bring his glasses with him today and I don't think he read all of this clearly.

"MR. BONNER: Your Honor, I question the calling of one Plaintiff to impeach another.

"THE WITNESS: I don't plan on impeaching him.

"THE COURT: Go ahead, Mr. Hoke, and let's get this thing identified.

"Q. (By Mr. Hoke). It's Plaintiff's Exhibit B (sic) that we're referring to.

"A. Yes, sir.

"Q. And has that document been materially altered in any way?

"A. To the best of my knowledge, no. There was an addition to the top referring to this case.

"Q. And what on the—where is that on the document?

"A. At the top of the page.

"Q. And what are the words that are typed on there?

"A. Bob Starrett, d/b/a Starrett Trucking, Plaintiff, versus Northwest Carriers, Incorporated, Claimant attachment to answer and counterclaim.

"Q. Is that copy substantially and the same as the document that was signed to your knowledge?

"A. Substantially it is the same.

"MR. LONG: Your Honor, these questions all relate to the very reason that they have such thing as a best evidence rule. Secondary evidence, et cetera, are all inferior to the best evidence. The best evidence is in existence; it's available and it's not here. I think the question (sic) relating to this document, this copy of a purported original document are irrelevant.

"MR. HOKE: If the Court please, under the new rules of evidence, copies are admissible, the same as any other document, and they are admissible on the foundation that they aren't substantially changed or their authenticity isn't substantially questioned.

"THE COURT: Or that they're not available.

"MR. HOKE: And I'd offer Defendants' Exhibit Number B at this time.

"THE COURT: Well, it will be refused."

Dorthea Starrett had previously testified that Exhibit B was "the basis" of Starretts' claim against Northwest, and that it was a "true and correct copy" of the lease agreement. Bob Starrett had testified that it was "an accurate copy as far as he could tell"; that the original was in his attorney's office in Salt Lake City, Utah; and that the original was executed on August 30, 1976, at the Starrett residence in Dixon, Wyoming, by Bob Starrett for the Starretts and by Olin Glover for Northwest.

We note that an objection to the admission of the lease agreement was not made at the time it as offered.[1] The trial court's comments at the conclusion of presentation of the evidence and at the time it rendered its decision are not particularly helpful in determining the reason for excluding the lease agreement from evidence. The court there said:

"Now, it seems to me that contrary to what Mr. Long said, and notwithstanding the fact that I think Exhibit B simply lacks admissibility because it lacks the circumstantial guarantees of truth worthiness to admit it into evidence, and apparently there is some support to the fact that the original of this was available to the Defendants, and which it was their duty to bring forward. And whether it was altered or not, at least that's the basis for not admitting it. That's however, notwithstanding, I also feel that there is sufficient unrefuted, indisputable evidence before the Court that there was a lease agreement between the parties. The difficulty that I have with the lease agreement is the fact that without any evidence whatsoever before the Court to show the terms of the agreement, and whether the lease has been fully performed, I don't know, and for me to

---

1. Procedural issues with reference to nonconformance with Rule 103(a), W.R.E. were not presented on appeal. Such rule provides:

   "(a) * * * Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

   "(1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

   "(2) Offer of Proof.—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

grant judgment against Northwest Carriers would be assuming that there has been incomplete performance upon the lease agreement."

If the reason for refusing to admit Exhibit B, a duplicate copy of the lease agreement, into evidence was the failure by Starretts to produce the available original, full effect was not given to Rule 1003, W.R.E., which provides:

"A duplicate is admissible under this rule or as may be otherwise provided by statute to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

■ Exhibit B falls within the definition of a "duplicate" and is admissible to the same extent as the original. A "duplicate" is defined in Rule 1001(4), W.R.E., as:

" * * * a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic rerecording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original."

The Advisory Committee's Note to the federal rule which is the antecedent of this Wyoming rule reads in part:

"The definition describes 'copies' produced by methods possessing an accuracy which virtually eliminates the possibility of error. Copies thus produced are given the status of originals in a large measure by Rule 1003, *infra*. * * * " 5 Weinstein's Evidence, p. 1001–6.

Exhibit B is a two-page photocopy document. The first page is titled "Wyoming Lease of Motor Vehicle Equipment." The second page is titled "Lessee and Lessor Consideration Agreement." As reflected in the quoted testimony of Dorthea Starrett, there is typed above the title on page 2 and at the top of the page "[B]obby Starrett dba Starrett Trucking, Plaintiff vs. Northwest Carriers, Inc., [D]efendant. Attachment to Answer and Counterclaim." It was not otherwise altered. Each page was executed by the parties as a separate instrument.

No question was raised as to the authenticity *of the original* so as to bring the matter within the first exception in Rule 1003, W.R.E. Nor does the record reflect any circumstances which would make it unfair to admit the duplicate so as to bring the matter within the second exception to Rule 1003. Northwest was aware that the lease agreement was a material element in Starretts' claim against it. The amended third-party complaint so indicated. Northwest had access to its own copy of the lease agreement. Northwest did not contend for any failure of the reproduction process.

■■ Inquiry was made concerning the possible alteration of the duplicate.

" * * * Even when accuracy is not conceded, the court should require persuasive reasons for rejecting duplicates which should be routinely accepted as a convenience to the court and the parties. A specific objection indicating why the original is needed should be required." 5 Weinstein's Evidence ¶ 1003[01], p. 1003–5.

Since a duplicate has the same status as an original pursuant to Rule 1003, an alteration of it would have the same effect on its admissibility or legal effect as would an alteration of an original. A material alteration of an instrument made after its execution by a party offering it into evidence, which alteration was not consented to by the other party, nullifies the instrument as a legal obligation. *Foxworthy v. Colby,* 64 Neb. 216, 89 N.W. 800 (1902); *Cities Service Oil Co. v. Viering,* 404 Ill. 538, 89 N.E.2d 392 (1949); *O. N. Bull Remedy Co. v. Boyer,* 109 Minn. 396, 124 N.W. 20 (1910). An alteration is material if it:

" * * * destroys the identity of the instrument or of the contract evidenced thereby, or which so changes its terms as to give it a different legal effect from that which it originally had, and thus works some change in the rights, obligations, interest, or relations of the parties.

* * * " 4 Am.Jur.2d Alteration of Instruments § 5, pp. 6–7 (1962).

And see *McLaughlin v. Venine,* 2 Wyo. 1 (1871); *Government of the Virgin Islands v. Brown,* 3rd Cir. 1955, 221 F.2d 402; *Consolidated Loan Company v. Harman,* 150 Cal. App.2d 488, 310 P.2d 450 (1957). The question as to whether or not an alteration is material is a question of law. *Mallory v. Sen Sin Ching,* 230 Or. 239, 369 P.2d 734 (1962); *United Concrete Pipe Corporation v. Spin-line Company,* Tex., 430 S.W.2d 360 (1968).

■ Accordingly, the material typed above the title on page 2 of Exhibit B cannot be said to be a *material* alteration of the exhibit. The record is without any indication that Northwest actually disputed the accuracy of the *material* terms of Exhibit B. It should have been received in evidence and considered along with other evidence in the determination of Starretts' claim against Northwest.

Our disposition of Starretts' contention with reference to the admissibility into evidence of the lease agreement makes it unnecessary for us to consider their contention with reference to the sufficiency of the evidence to establish liability of Northwest to them.

However, we will address Starretts' contention with reference to the propriety of entering a default judgment against Northwest because a non-lawyer corporate officer filed a motion to quash service of summons on Northwest inasmuch as an upholding of such contention would result in a reversal without remand.

■ Regardless of a person's interest or association with a corporation, he may not represent the corporation in court unless he is an attorney admitted to practice before that court. *Linde v. Bentley,* Wyo., 482 P.2d 121 (1971). See Annotation, 19 A.L. R.3d 1073 (1968). Northwest's corporate officer did file the motion to quash service, and he was not an attorney. Starretts then filed a motion to strike the motion to quash service and to allow them to take a default judgment. Thereafter, an attorney admitted to practice before the Wyoming courts appeared for Northwest by filing a motion to dismiss the third-party·complaint, and he has represented Northwest in this action since then. After hearing argument on the motions, the trial court held that the improper appearance of Northwest through a non-lawyer corporate officer was "cured" by the subsequent proper appearance of Northwest through an attorney. However, the trial court did not recognize or act on the motion to quash service of summons which was filed by the non-lawyer corporate officer.

Starretts point to *Linde v. Bentley,* supra, and to *Securities and Exchange Commission v. Research Automation Corporation,* 2nd Cir. 1975, 521 F.2d 585, to support their position that a default judgment against Northwest should have been allowed. The trial court's ruling on this issue is not inconsistent with the holding in those cases. In the *Linde* case, the court ordered pleadings filed by the non-lawyer corporate representative to be struck, but a default judgment was not entered. In the *Securities and Exchange Commission* case, the court said at pages 589–590 of 521 F.2d that:

" * * * [A]lthough we affirm the entry of a default judgment against RAC, we do so without prejudice to its right to seek to reopen the judgment in the district court upon satisfying the court that its officers were unaware of the requirement and that it will promptly appear through counsel."

■■ Pleadings filed and actions taken by a non-lawyer corporate officer in a legal action are subject to be stricken or held to be a nullity; and there may be cases in which the entry of a default judgment against a corporation may be justified on the ground that the corporation was improperly represented in the action by a non-lawyer corporate officer, but such is not justified in a case such as this, wherein the representation was very limited. The record does not reflect that the representation was made with knowledge of its impropriety, it was followed within a reasonable time by proper representation through an attor-

ney admitted to practice before the court, and the other party was not substantially prejudiced thereby.

The trial court did not here abuse its discretion in not granting Starretts' motion for a default judgment.

The judgment in favor of Shepard is affirmed. The judgment in favor of Northwest is reversed, and the case is remanded for a new trial on Starretts' claim against Northwest.[2]

2. The trial court may desire to have the issues reformed and specified through a pre-trial conference or otherwise, it being noted that an answer to the third-party complaint or to the third-party amended complaint was not served or filed, and that trial proceeded immediately after the court disposed of the motion of third-party defendant to dismiss the third-party amended complaint which motion was served but never filed.